Hubley Township,              :
           Petitioner     :
                               :
    v.                  :  No. 899 C.D. 2017
                               :  SUBMITTED:  April 12, 2018
Roger Wetzel, William Wolfgang,  :
Randy Shadle, Kenneth W. Richter,  :
Kenneth Graham, Harry Mausser,  :
and Hegins Township,         :
           Respondents  :

Hegins Township,           :
           Petitioner     :
                               :
      v.              :  No. 969 C.D. 2017
                               :
Hubley Township and       :
Commonwealth of Pennsylvania  :
Department of Environmental   :
Protection,             :
           Respondents  :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                            FILED:  May 22, 2018

In these consolidated appeals, Hubley Township (Hubley) petitions for review of the June 7, 2017 Adjudication of the Pennsylvania Environmental Hearing Board (Board), which (1) sustained the appeal of Roger Wetzel, William Wolfgang, Randy Shadle, Kenneth W. Richter, Kenneth Graham, and Harry Mausser (together, Landowners) and (2) vacated the Pennsylvania Department of Environmental

Protection's (DEP) April 17, 2015 approval of the Joint Act 537 Sewage Facilities Plan Update (Joint Plan) submitted by Hubley and Hegins Township (Hegins) pursuant to the Pennsylvania Sewage Facilities Act (Act).[1] Hegins has also filed a Cross-Petition for Review, seeking reversal of the Board's Adjudication only to the extent that it denied Hegins' request to remand this matter to DEP for further public comment on the Joint Plan. For the reasons that follow, we reverse the Board's Adjudication and deny Hegins' request for a remand.

## Background

Hubley and Hegins (together, the Townships) are neighboring municipalities located in Schuylkill County, Pennsylvania. Bd. Finding of Fact (F.F.) No. 3. On October 3, 2013, the Townships and the Hegins-Hubley Water Authority executed an intermunicipal agreement, authorizing the Authority to develop, finance, construct, and operate a sewage collection and treatment system serving both Townships. Bd. Adjudication at 13. Under the intermunicipal agreement, the Hegins-Hubley Water Authority would ultimately take control of implementing the Townships' Joint Plan. Bd. F.F. No. 71.

---

[1] Act of Jan. 24, 1966, P.L. (1965) 1535, *as amended*, 35 §§ P.S. 750.1-750.20a. The purpose of the Act is "to ensure public health, safety and welfare of the citizens by providing for a technically competent, integrated and coordinated system of sanitary sewage disposal." Section 3 of the Act, 35 P.S. § 750.3. Section 5 of the Act requires every municipality to adopt an official plan, commonly known as an "Act 537" plan, subject to DEP's approval. 35 P.S. § 750.5. Municipalities are required to update their Act 537 plans to account for new development and other changes that impact sewage capacity. *Id.*

The Act permits two municipalities to submit a joint Act 537 plan or any revisions thereto. Section 5(c) of the Act, 35 P.S. § 750.5(c). It also sets forth a policy favoring intermunicipal cooperation in implementing and administering Act 537 plans. Section 3(2) and (3) of the Act, 35 P.S. § 750.3(2), (3). However, the Act does not require the submission of a joint Act 537 plan, even where two municipalities share a sewage treatment facility.

2

On August 4, 2014, the Townships submitted their Joint Plan to DEP.  Bd. F.F. No. 4.  The Joint Plan was the first comprehensive revision to the Townships' Act 537 plans since 1967.  Bd. F.F. No. 63.  In the Joint Plan, the Townships proposed the construction of a 600,000-gallon-per-day wastewater treatment plant in Hubley.  Bd. F.F. No. 4.  They also proposed the installation of public sewers in various sections of both Townships where there had been on-lot septic malfunctions and direct discharges of raw sewage into Commonwealth waters.  Bd. Adjudication at 12.

On September 8, 2014, DEP issued preliminary comments to the Townships about the Joint Plan.  Bd. F.F. No. 5.  On September 23, 2014, DEP received a response from the Townships.  Bd. F.F. No. 6.  On March 20, 2015, DEP sent a comment letter to the Townships, outlining 13 technical issues with the Joint Plan.  Bd. F.F. Nos. 7-8. On April 6, 2015, the Townships responded to DEP's comments via letter and provided supplementary materials in support of the Joint Plan.  Bd. F.F. No. 9.  No public hearings were held on the Joint Plan following the Townships' April 6, 2015 letter. Bd. F.F. Nos. 10, 70.  Both Townships passed resolutions approving the Joint Plan before obtaining DEP's approval.  Bd. F.F. Nos. 15, 60.[2]

On April 17, 2015, DEP issued a written decision approving the Joint Plan.  Bd. F.F. No. 12.  Landowners, who own properties within the proposed planning area, appealed DEP's approval of the Plan.  Bd. F.F. No. 13.  In their Notice of Appeal, Landowners raised various objections, primarily asserting that the costs of the Joint Plan were unreasonable and unjustifiable.  Both Townships initially joined DEP in defense of the Joint Plan.  Bd. Adjudication at 14, 37.  During the pendency of the

---

[2] On April 13, 2015, the Hegins Township Board of Supervisors passed a resolution approving the Joint Plan.  Bd. F.F. No. 66.  Kenneth W. Richter, a Landowner in this appeal, attended the April 13, 2015 meeting and voiced his objection to the Joint Plan.  *Id.*  Richter also sits on the Board of the Hegins-Hubley Water Authority.  Bd. F.F. No. 64.

appeal, however, Hegins changed positions and decided to join Landowners' challenge to the economic unfeasibility of the Joint Plan. *Id.* at 37.

The Board held a two-day evidentiary hearing on April 19 and April 20, 2016. At the hearing, Hegins' counsel stated:

> It's become clear that the Plan as written is to benefit certain individuals within Hubley Township, all done at the detriment of residents of Hegins Township. The record evidence will show that coincidentally, as the Plan stands now, the sewage treatment facility center is planned to go on the property of one of the members of the Board of Supervisors of Hubley Township.

N.T., 4/19/16, at 7-8.[3] Hegins' position at the hearing was that the Joint "Plan as written severely underestimates the true cost of the project." *Id.* at 8. Landowners' expert, Entech Engineering, Inc. (Entech), projected the cost to be $38 million, whereas Hubley's expert, Alfred Benesch and Company (Benesch), projected the cost to be $26 million.[4] Hegins maintained that DEP "only relied on Benesch's estimates which

---

[3] The only express reference at the hearing to Hegins' change of position (from supporting the Joint Plan to opposing it) was the following statement by the presiding administrative law judge:

> When we had our call last week, we had talked about the order of presentation. [Landowners] have the burden so we're going to proceed first with [Landowners'] case. Because of the unusual posture of Hegins Township who had initially supported the Plan and now is opposed to the Plan, I think we agreed that you would go second followed by [DEP] and then Hubley Township. So we'll proceed that way.

N.T., 4/19/16, at 11.

[4] Entech prepared its report in February 2016. *See* N.T., 4/19/16, Ex. A-12. In its report, Entech stated that it was requested to do so "by the Hegins Township Board of Supervisors at their January 4, 2016 meeting." *Id.*, Ex. A-12, at 1. Hegins and Landowners also presented the expert report and testimony of engineer Frederick Ebert, who opined that DEP "failed to require Hegins and Hubley Townships to properly prepare the 537 Plan" in accordance with the regulations and that the Joint Plan "did not meet the requirements of a complete alternative evaluation and accurate construction cost estimates . . . to provide the public with a complete understanding of all the wastewater alternatives." *Id.*, Ex. A-10, at 1. Ebert prepared his expert report in December 2015.

4

severely underestimated true costs of the Plan." *Id.* Hubley's position, in contrast, was that both Townships had "agreed both through municipal action, ordinances, . . . and through an intermunicipal agreement to hire Benesch . . . to prepare an Act 537 Plan, to investigate what was needed to put that Plan together, and to come up with a Plan that could be submitted to DEP; and that's what they did." *Id.* at 10.

Following the hearing and additional briefing by the parties, the Board concluded that the Joint Plan satisfied all regulatory requirements and that the Joint Plan, as approved by DEP, was feasible and able to be implemented. Bd. Adjudication at 28.[5] The Board found, however, that Hegins was not committed to implementation of the Joint Plan. Bd. Conclusion of Law (C.L.) No. 12. Although the Board determined that DEP acted reasonably at the time it approved the Joint Plan, the Board found that circumstances had changed because Hegins had since demonstrated that it lacked the necessary commitment to implement the Joint Plan. Bd. C.L. No. 10; Bd. Adjudication at 40-41. The Board noted that an Act 537 plan cannot be upheld if the municipality lacks the commitment to implement it. Bd. Adjudication at 37 (citing *Wilson v. DEP*, 2010 EHB 827 (2010)). The Board explained:

> Hegins Township worked with Hubley Township to prepare and submit the Joint Act 537 Plan . . . [and] to respond to review comments from [DEP] and during the public notice procedures to respond to public comments. After [Landowners] filed their appeal challenging [DEP's] decision[,] the two Townships retained a single counsel to represent the[m] . . . in the appeal. During the initial stages of litigation, the two Townships presented a joint effort to defend their Joint Act 537 Plan. But then in late 2015 or early 2016, something appears to have altered Hegins Township's position.

---

[5] *See* 25 Pa. Code § 71.32(d)(4) ("In approving or disapproving an official plan or official plan revision, [DEP] will consider . . . [w]hether the official plan or official plan revision is able to be implemented."); *Id.* § 71.31(f) ("The municipality shall adopt the official plan by resolution, with specific reference to the alternatives of choice and a commitment to implement the plan within the time limits established in an implementation schedule.").

5

. . . .

Since it switched sides in this appeal to support [Landowners] and to stop defending its Joint Act 537 Plan, Hegins Township has actively supported [Landowners] in their challenge. Hegins Township often took the lead at the Hearing in presenting witnesses and conducting direct and cross examination. Hegins Township prepared the main Post-Hearing Brief that [Landowners] simply incorporated by reference as their brief.

Hegins Township's actions since January 2016 when it switched sides to support [Landowners] in their challenge to the Joint Act 537 Plan is a strong indication that Hegins Township no longer has the commitment to implement its Joint Act 537 Plan under Sections 71.32(d)(4) and 71.31(f) [of the Pennsylvania Code]. 25 Pa. Code §§ 71.31(f) and 71.32(d)(4).

. . . .

. . . The circumstances have changed since [DEP] approved the Plan, and the Board is authorized and required to consider these changed circumstances since [DEP] took its action under appeal. Through its words and actions, Hegins Township has demonstrated that it no longer has the required municipal commitment to implement the Joint Act 537 Plan.

*Id.* at 37-38, 40-41 (footnote omitted).[6] Therefore, the Board sustained Landowners' appeal and vacated DEP's approval of the Joint Plan. Both Hubley and Hegins now petition for review of that decision.

---

[6] Two of the five Board members dissented, finding that the majority improperly vacated DEP's approval of the Joint Plan on a ground "not raised by *any* of the parties." Bd. Adjudication at 50 (emphasis in original). First, the dissent emphasized that "[n]o party, including [Landowners], who bear the burden of proving that [DEP] erred, has presented any argument or evidence to support the Majority's conclusion that Hegins is not committed to implementing the plan update." *Id*. Second, the dissent believed that the majority improperly relied on *Wilson v. DEP*, 2010 EHB 827 (2010), to justify its *sua sponte* action. *Id.* at 51. The dissent distinguished *Wilson* as follows:

First, the appellants in *Wilson* did in fact argue that the plan needed to be vacated due to a lack of commitment. No party in the case now before us even cited *Wilson*. Second, [DEP's] action in *Wilson* was not supported by the facts when it was taken because it was undisputed that the Township, even at that time, had decided not to implement the plan. Subsequent events confirmed the lack of commitment, but that

6

## Parties' Arguments on Appeal

Hubley asserts that this Court should reverse the Board's decision for the following reasons. First, the Board erred in finding that Hegins was not committed to implementing the Joint Plan based solely on Hegins' alignment with Landowners' position during the appeal. There is no evidence of record to support the Board's finding. Hegins did not repeal its resolution supporting the Joint Plan, nor had it taken any steps to withdraw from or rescind its intermunicipal agreement with Hubley and the Hegins-Hubley Water Authority. The Board erroneously presumed that Hegins would no longer take affirmative steps to implement the Joint Plan or negotiate with Hubley to modify the Joint Plan if the Board were to deny Landowners' appeal. Second, DEP correctly determined that the Joint Plan complied with its regulations, and DEP's interpretation is entitled to deference absent a showing of a manifest abuse of discretion. Third, the Board's sole basis for sustaining Landowners' appeal— Hegins' purported lack of commitment—was not raised or addressed by any of the parties. Finally, the Board's decision directly conflicts with the Act's policy to protect public health, safety, and welfare.

DEP, an intervenor in this appeal, argues that the Board's *sua sponte* finding that Hegins lacked the commitment necessary to implement the Joint Plan is unsupported by substantial evidence. All of Hegins' official municipal actions, as found by the Board, demonstrated its commitment to implementing the Joint Plan. The Board also

---

lack of commitment could be traced back to the time of [DEP's] decision, which is what we review. That is not the case here. Third and most importantly, the Township in *Wilson*, contemporaneously with the Board proceeding, was in fact following proper procedures to further revise its plan in accordance with the Act. Indeed, the Township had already entered into a consent order and agreement [(COA)] with [DEP], and it was actively revising its plan in accordance with the law and that COA. Again, that is not the case here.

*Id.* Thus, the dissent would have upheld DEP's "lawful and reasonable decision." *Id.* at 52.

7

erred in taking judicial notice of Hegins' alleged lack of commitment without giving the parties an opportunity to be heard on the matter.

In contrast, Hegins contends that the Board properly took judicial notice that Hegins lacked the requisite intent to implement the Joint Plan. Hegins' persistent opposition to the Joint Plan during the course of the appeal was substantial evidence of its lack of commitment. Hegins further contends that if this Court reverses the Board's decision, we must remand to DEP for additional public comment due to significant changes made to the Joint Plan during the review period.

Landowners likewise assert that the Board correctly sustained their appeal based on Hegins' lack of commitment. Hegins clearly demonstrated on the face of the record that it no longer had the necessary commitment to implement the Joint Plan by actively opposing it throughout the appeals process.

### **Analysis**

Our review of the Board's Adjudication is "limited to determining whether constitutional rights have been violated, an error of law has been committed, or whether necessary findings of fact are supported by substantial evidence." *Oley Twp. v. Pa. Dep't of Envtl. Prot.*, 710 A.2d 1228, 1230 (Pa. Cmwlth. 1998). Substantial evidence is "relevant evidence upon which a reasonable mind could base a conclusion." *Kiskadden v. Pa. Dep't of Envtl. Prot.*, 149 A.3d 380, 387 (Pa. Cmwlth. 2016). We "must review the adjudication of the Board rather than the administrative action which was reviewed by the Board." *United Refining Co. v. Dep't of Envtl. Prot.*, 163 A.3d 1125, 1136 (Pa. Cmwlth. 2017) (quoting another source).

### 1. **Hubley's Petition for Review**

Hubley asserts that the Board erred in vacating DEP's approval of the Joint Plan based solely on the Board's *sua sponte* finding that Hegins lacked the necessary

commitment, where the Board concluded, based on the substantial record evidence, that the Joint Plan complied with all applicable regulations. We agree.

On appeal to the Board, the party challenging DEP's action has the burden of proving that DEP acted arbitrarily or abused its discretion. *Pa. Trout v. Dep't of Envtl. Prot.*, 863 A.2d 93, 105 (Pa. Cmwlth. 2004). The Board is required to conduct a hearing *de novo*. *Id.* "The Board's *de novo* review allows it to admit and consider evidence that was not before [DEP] when it made its initial decision, including evidence developed since the filing of the appeal." *United Refining*, 163 A.3d at 1136. The Board must "determine[] the reasonableness and legality of [DEP's] actions based upon the record developed before the Board." *Id.*

After a two-day, *de novo* hearing, the Board concluded that DEP's approval of the Joint Plan was neither arbitrary nor an abuse of discretion. Bd. C.L. No. 4. In fact, the Board determined that the Joint Plan complied with all applicable DEP regulations and was both economically feasible and able to be implemented. Bd. C.L. Nos. 5, 9; Bd. Adjudication at 28. Based on the evidence presented at the hearing, the Board concluded as follows:

> 4. At the time [DEP] approved the Plan, [Landowners] ha[d] not met their burden of demonstrating that [DEP] abused its discretion in approving the Joint Act 537 Plan. *See Browning-Ferris Industries, Inc. v. DEP et al.*, 819 A.2d 148, 153 (Pa. Cmwlth. 2003) *citing Pequea Township v. Herr*, 716 A.2d 678 (Pa. Cmwlth. 1998).

> 5. At the time [DEP] approved the Plan, [DEP] acted reasonably when it determined that the Joint Act 537 Plan satisfied all applicable laws and regulations and approved the joint plan update revision on April 17, 2015. 35 P.S. § 750.1 *et seq.*, 25 Pa. Code Chapters 71-73.

> 6. [DEP] properly determined that Hegins Township and Hubley Township satisfied all applicable public notice and comment requirements

9

in preparing its joint plan update revision. 25 Pa. Code §§ 71.31(c), 71.32(d)(2).

7. [DEP] properly determined that Hegins Township and Hubley Township reasonably identified, evaluated, and selected sewage disposal alternatives. 25 Pa. Code §§ 71.21(a)(6), 71.61(c).

8. [DEP] properly determined that the Joint Act 537 Plan is "technically, environmentally, and administratively acceptable" for the current and planned sewage disposal needs. 25 Pa. Code § 71.21(a)(6).

9. At the time [DEP] approved the Plan, [DEP] reasonably determined that Hegins and Hubley Townships were able and committed to implement their joint plan update revision when it was approved. 25 Pa. Code §§ 71.32(d)(4), 71.31(f).

Bd. C.L. Nos. 4-9.

With regard to the economic feasibility of the Joint Plan, the Board specifically credited the testimony of Hubley's expert over that of Landowners' experts,[7] concluding that Landowners "had not met their burden to establish that the Joint Act 537 Plan is not able to be implemented based on inaccurate cost estimates and economic feasibility." Bd. Adjudication at 30. The Board stated:

> While [Landowners] and Hegins Township have identified a number of legitimate concerns regarding the implementation of the Plan . . . , the Board finds that [DEP] and Hubley Township have addressed these concerns to the extent necessary to support [DEP's] decision to approve the [Joint] Plan under the applicable regulatory requirements. [DEP] has the authority and discretion to evaluate whether a plan revision is "able to be implemented" on a case-by-case basis. [Landowners] and Hegins Township have not met their burden of proof to establish that [DEP] acted in a way that was unreasonable, contrary to law, not supported by the facts, or that was inconsistent with [DEP's] obligations under the Pennsylvania

---

[7] The Board discredited Landowners' expert, Frederick Ebert, based on its concerns about his potential bias because Ebert owns property in Hegins, his parents live in Hegins, and "there are questions as to whether he reviewed all of the materials in the Plan files." Bd. Adjudication at 30-31.

10

Constitution, when it decided that the Joint Act 537 Plan is "able to be implemented."

*Id.* at 33.

Despite these conclusions, however, the Board ultimately determined that "changed circumstances" demonstrated Hegins' lack of commitment to the Joint Plan. Bd. C.L. Nos. 10, 12. This conclusion was based solely on events that took place after Landowners had filed their appeal. In doing so, the Board reasoned that it is permitted to take judicial notice of facts contained in filings on its own docket. Bd. Adjudication at 43; *see* 25 Pa. Code § 1021.125(a)(3) (stating that "[t]he Board may take official notice of . . . [r]ecord facts reflected in the [Board's] official docket"). However, the Board repeatedly indicated that it did not know why Hegins had changed its position, and Hegins introduced no evidence to explain its change of position at the hearing. *See* Bd. Adjudication at 37 n.17 ("The Board does not know what, if anything, happened to trigger Hegins Township['s] abrupt change in position."); *id.* at 37 (noting that in early 2016, "something appears to have altered Hegins Township's position").[8] Absent any evidence on that specific issue, the Board merely speculated about Hegins' future intentions, which is beyond the scope of the Board's review powers. *See United Refining*, 163 A.3d at 1136.

Moreover, the record shows that Hegins formally passed a resolution adopting the Joint Plan and denoting its commitment to implementing the Joint Plan. *See* 25 Pa. Code § 71.31(f) (requiring municipality to "adopt the official plan by resolution, with specific reference to the alternatives of choice and a commitment to implement

---

[8] It appears that Hegins neither addressed nor explained its reason for abruptly changing positions until the present appeal. In its brief filed with this Court, Hegins states that in January 2016, a new Hegins Township Board of Supervisors took office, after which Hegins notified Hubley, DEP, and the Board that it would align with Landowners and oppose DEP's approval of the Joint Plan. Hegins Br. at 6-7. According to Hegins, the "Board of Supervisors expanded from three to five members and due to the deficiencies in the Joint Plan, especially its economic unfeasibility, Hegins Township decided to support [Landowners'] appeal." *Id.* at 13 n.2.

11

the plan within the time limits established in an implementation schedule."). Hegins also entered into an intermunicipal agreement with Hubley, authorizing the Hegins-Hubley Water Authority to implement, build, and operate the Townships' chosen sewage treatment alternative. All of Hegins' official municipal actions, which were made part of the record, support the Board's conclusion that "[DEP] reasonably determined that Hegins and Hubley Townships were able and committed to implement their joint plan update revision when it was approved." Bd. C.L. No. 9.

Critically, Hegins took no official action, consistent with the Act's requirements, to modify or rescind its adopted resolution or the Townships' intermunicipal agreement. Bd. F.F. No. 62. Rather, Hegins unilaterally decided, mid-appeal, that it no longer wished to support the Joint Plan, apparently due to a change in township leadership. *See* Hegins Br. at 6-7. However, a municipality cannot "undo" an official resolution simply by declaring to the Board and this Court that it has "changed its mind" without going through the proper procedural channels. *See* Section 5(a) of the Act, 35 P.S. § 750.5(a) (stating that any revisions to an Act 537 plan "shall conform to the requirements of subsection (d) of this section and the rules and regulations of [DEP]").

We agree with Hubley and DEP that the Board's ruling undermines the Act's procedures and contradicts the Act's express policy of protecting "public health, safety and welfare of the citizens by providing for a technically competent, integrated and coordinated system of sanitary sewage disposal." Section 3 of the Act, 35 P.S. § 750.3. We will not permit Hegins to escape its public commitment, and its agreed-upon obligation, to work with Hubley and the Hegins-Hubley Water Authority to implement a viable sewage treatment plan without following "the proper and transparent procedures outlined in the Sewage Facilities Act." Bd. Adjudication at 51.

12

For these reasons, we conclude that the Board erred in vacating DEP's approval of the Joint Plan based solely on its *sua sponte* finding that Hegins lacked the requisite commitment. The Board's decision is particularly disconcerting in light of the substantial, credible evidence of record to support DEP's approval of the Joint Plan, as the Board itself found. *See* Bd. C.L. Nos. 4-9; *see also* Bd. Adjudication at 50 (recognizing that the Joint Plan "would have gone a long way toward solving [both] Townships' sewage problems"). Therefore, we reverse the Board's Adjudication.

## 2. Hegins' Cross-Petition for Review

In its Cross-Petition for Review, Hegins asks this Court to remand this matter to DEP for additional public comment on the most recent revisions to the Joint Plan.[9] Hegins contends that additional public comment is both necessary and required because DEP approved the Joint Plan, without additional public comment, only 11 days after receiving "significant" changes to the Joint Plan in April 2015. We disagree.

DEP's March 20, 2015 letter outlined several "significant concerns" that the Townships needed to address. Bd. F.F. No. 83. After reviewing the Townships' April 6, 2015 response, DEP determined that the Townships' changes to the Joint Plan did not alter either the nature or scope of the Joint Plan. *Id.*; *see* N.T., 4/20/16, at 247-48.[10]

---

[9] Hegins states that its Cross-Petition "is conditional and limited in that it seeks reversal of the [Board's Adjudication] only to the extent [the Board] denied Hegins' alternative request to remand this matter back to the DEP and instruct the DEP to require [the Townships] to open the Joint Plan to public comment in light of significant revisions and supplementations made to it on April 6, 2015." Hegins' Br. at 2. Hegins "only seeks such reversal if this Court reverses [the Board's] decision." *Id.* Because we are reversing the Board's Adjudication, we must address Hegins' request for a remand.

[10] DEP representative Darryl Fritz explained some of the changes as follows:

I went down to the . . . April 6th response from Benesch [Engineering] and looked at the issues and the contents to see if there was any change in the nature, scope of the project. Did it include more area? Did it delete area? Which it did not. The service

13

Specifically, DEP concluded that the revisions in the Townships' letter, while considerable in number, were not so significant in substance as to require additional public comment. *Id.* at 253.

Based on its review of the record, the Board agreed with DEP that the Townships' April 6, 2015 letter did not change the nature or scope of the Joint Plan and their "responses and related clarifications and changes were not themselves significant." Bd. Adjudication at 22-23; *see* Bd. F.F. No. 83 ("The fact that [DEP's] concerns were viewed by [DEP] as significant does not necessarily make the Township[s'] responses to those concerns and the related changes to the Plan significant."). Because we conclude that the Board did not abuse its discretion in this regard, we deny Hegins' request for a remand to DEP.

## Conclusion

Accordingly, we reverse the Board's Adjudication and deny Hegins' request for a remand.

_____
ELLEN CEISLER, Judge

---

area mapping that they provided was consistent with what the plan had provided for before.

There were some cost changes due to the addition of -- the parcel acquisition costs. [I] [t]ook a look at how that affected the user rates. And the user rates, I believe, were affected somewhere in the range of 22 to 24 cents a month. That user rate was still within the range that was in the original public notice.

N.T., 4/20/16, at 248.

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Hubley Township, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 899 C.D. 2017 |
| | : | |
| Roger Wetzel, William Wolfgang, | : | |
| Randy Shadle, Kenneth W. Richter, | : | |
| Kenneth Graham, Harry Mausser, | : | |
| and Hegins Township, | : | |
| Respondents | : | |
| | | |
| Hegins Township, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 969 C.D. 2017 |
| | : | |
| Hubley Township and | : | |
| Commonwealth of Pennsylvania | : | |
| Department of Environmental | : | |
| Protection, | : | |
| Respondents | : | |

## O R D E R

AND NOW, this 22nd day of May, 2018, the Adjudication of the Pennsylvania Environmental Hearing Board, dated June 7, 2017, is hereby reversed, and Hegins Township's request for a remand to the Pennsylvania Department of Environmental Protection is hereby denied.

_____

ELLEN CEISLER, Judge